FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2009 MAR 26 AM 10: 28

CLERK _____
SO. DIST. OF GA.

BO'MAZ UNLIMITED, INC., BOBBY )
FABIAN, and MAZIE FABIAN, )
                         )
      Plaintiffs, )
                         )
v. )
                         )
CITY OF WALTHOURVILLE, )
GEORGIA, a Municipal )
Corporation, HENRY FRASIER, )      CASE NO. CV407-163
in his official and )
individual capacities, )
PATRICIA GREEN, in her )
official and individual )
capacities, JAMES HENDRY, in )
his official and individual )
capacities, LUCIRIA LOVETTE, )
in her official and )
individual capacities, )
CHARLES ANDERSON, SR., in his )
official and individual )
capacities, LARRY D. BAKER, )
in his official and )
individual capacities, )
                         )
      Defendants. )
_____)

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 24.) For the reasons that follow, Defendants' Motion is **GRANTED**. The **Clerk of Court** is **DIRECTED** to **CLOSE** this case.

### BACKGROUND

Plaintiff Bo'Maz Unlimited, Inc. is a Georgia corporation and the owner of "Bo'Maz," a "supper and night

club" in Walthourville, Georgia. (Doc. 1 ¶ 1.) Plaintiffs Bobby Fabian and Mazie Fabian are the sole owners of Bo'Maz Unlimited. (Id.) Bo'Maz is the only night club in Walthourville and has been licensed to sell alcoholic beverages since 1990.[1] (Id. ¶ 17.) The club is open for private parties Monday through Friday and to the general public on Saturday and Sunday nights. (Id. ¶¶ 14 & 15.) Over 95% of the club's revenue is generated on the nights it is open to the general public.[2] (Id. ¶ 16.)

On Sunday, May 20, 2007 at 3:32 a.m., an officer from the Liberty County Sheriff's Department was dispatched to the club in response to a reported fight in the parking lot. (Doc. 10 at 30.) While the Officer was attempting to maneuver through the congested parking lot, he heard between ten and fifteen gunshots fired from three separate locations in the lot. (Id. at 31.) The gunshots caused confusion as club patrons attempted to flee the area, making the scene uncontrollable and hazardous. (Id.)

---

[1] Plaintiff Bo'Maz held both a consumption license from the State of Georgia and a Sunday Sales License from the City of Walthourville. (See Doc. 1, Ex. 2.)

[2] Due to this matter being before the Court on Defendants' Motion for Summary Judgment, disputed facts are construed in the light most favorable to Plaintiffs. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

After additional officers arrived, the Sheriff's Department managed to secure the area.[3] (Id.)

In response, the Sheriff's Department recommended to the Walthourville City Council that the City shut down the Bo'Maz club for thirty days. (Id. at 33.) The Sheriff's Department reasoned that the closure would allow the club to develop some way to increase security in the parking lot. (Id.) On May 25, 2007, Plaintiffs received notice from the City of Walthourville, directing them to show cause at a City Council meeting why their alcoholic beverage license should not be suspended or revoked. (Doc. 1 ¶ 19.) The notice informed Plaintiffs of the basis for the proposed revocation of the license. (Id. ¶ 20.)

On June 6, 2007, the City held the show cause hearing during a meeting of the City Council. (Id. ¶ 21.) The Liberty County Sheriff's Department presented evidence concerning the events of May 20, 2007 and recommended that the license be suspended for thirty days. (Id., Ex. 5.)

---

[3] This type of event was not an uncommon occurrence at Bo'Maz. In a five-month period, officers were dispatched to the Bo'Maz club twenty-eight times. (Id. at 34.) By way of comparison, two similar clubs in Liberty County had officers dispatched to their location no more than three times over the same period. (Doc. 10 at 34.) Over a one-year period, police were dispatched to the Bo'Maz club eighty times, compared with ten and eleven times to the other clubs. (Id.)

Plaintiffs were present at the meeting and, through their attorney, introduced evidence to support the argument that the license should not be suspended or revoked. (Id.) The City Council voted to take the evidence under advisement and rule on the license at its next meeting—June 12, 2007. (Id.)

At the June 12, 2007 meeting, the City Council unanimously voted not to suspend the license. (Id.) However, at that same meeting, Defendant Lovette moved the City Council to amend the Alcoholic Beverage Ordinance. (Id.) The amendment prohibited any establishment, other than grocery or convenience stores, from selling alcohol after 2:55 a.m. on Monday through Friday, and after 12:00 p.m. on Saturday. (Id., Ex. 7.) Also, the amendment barred the sale of alcohol before 8:00 a.m. on Monday through Saturday, and at any time on Sunday. (Id.) The effect of the amendment was to revoke Plaintiff Bo'Maz's Sunday Sales License by prohibiting the sale of alcohol on that day.[4]

---

[4] The amended Ordinance read as follows:

> SEC. 111    HOURS OF SALE
> It shall be unlawful for any establishment other than grocery and convenience type stores engaged in the sale of alcoholic beverages to sell, serve, barter, trade or give away any such beverages from and after the hour of 2:55 a.m. on Monday through Friday, or to

In response to Defendants' actions, Plaintiffs filed an action in this Court, alleging that the ordinance was unlawful and requesting an injunction. (Doc. 1 ¶ 29), Bo'Maz Unlimited, Inc. et al. v. City of Wathourville, Ga., 4:07-cv-163 (S.D. Ga. June 22, 2007). In that case, Plaintiffs argued that the amendment violated their right to due process because they did not receive proper notice of the proposed amendment. Also, Plaintiffs contended that the ordinance denied them equal protection of the laws. On September 11, 2007, prior to the Court ruling on Plaintiffs' request for a temporary injunction, Defendants repealed the amendment to the Alcoholic Beverage Ordinance. (Doc. 1 ¶ 30.) As a result, the Court dismissed that case as moot. (Id.)

On September 20, 2007, Plaintiffs received notice of a second show cause hearing concerning their Sunday Sales License. (Doc. 29.) The hearing was initially scheduled for October 2, 2007. (Id.) In order to accommodate

---

sell, serve, barter, trade or give away such beverages after the hour of 12:00 midnight on Saturday. Any such establishment is further prohibited from in [sic] engaging in the sale of such beverages before 8:00 a.m. on any day of the week, except for Sunday. In no event, shall any such establishment sell, serve, barter, trade or give away any beverage during any hours on Sunday.

(Doc. 1, Ex. 7.)

Plaintiffs' schedules, Defendants rescheduled the hearing for October 12, 2007. (Doc. 28 at 80.) However, Plaintiffs elected not to attend the October 12, 2007 hearing because they felt it concerned the same issues discussed at the June 6, 2007 show cause hearing. (Id.) After hearing testimony concerning the various problems at the club, the city council unanimously voted to revoke Plaintiffs' Sunday Sales License. (Id. at 88-89.) In response, Plaintiffs instituted the present action.

In their Complaint, Plaintiffs argue that they were denied due process and equal protection of the laws based on the June 12, 2007 amendment to the Alcoholic Beverage Ordinance and the October 12, 2007 revocation of their Sunday Sales License. (Doc. 1.) Plaintiffs seek to enjoin the City of Walthourville from enforcing the revocation of their Sunday Sales License. In addition, Plaintiffs seek damages for (1) violation of their civil rights under 42 U.S.C. § 1983, (2) conspiracy to violate their civil rights under 42 U.S.C. § 1985, (3) neglect to prevent a conspiracy to violate their civil rights under 42 U.S.C. § 1986, (4) attorneys fees under 42 U.S.C. § 1988(b), and (5) punitive damages.[5]

---

[5] Plaintiffs seek damages for those periods of time they were unable to sell alcohol on Sunday—June 12, 2007 to

Defendants filed their Motion for Summary Judgment on August 5, 2008. In their Motion, Defendants advance three arguments for summary judgment. First, Defendants assert that Plaintiffs' claims must fail because they did not have any constitutionally protected property interest in the Sunday Sales License. (Doc. 24 at 25.) Second, Defendants contend that, even if the Sunday Sales License was a protected property interest, the notice and opportunity to be heard concerning possible revocation of their Sunday Sales License satisfies due process. (Id. at 25-28.) Third, Defendants argue that Plaintiffs' equal protection claim must fail because the revocation of the Sunday Sales License is rationally related to the City's interest in public safety.

In their Response, Plaintiffs argue that the sudden change in the ordinance deprived them of their constitutionally protected "right to earn a living" without adequate notice or hearing. (Doc. 29 at 13.) Also, Plaintiffs assert that their right to a Sunday Sales License is a "right cognizable and enforceable by the 14th Amendment." (Id. at 16.) In addition, Plaintiffs maintain that the amended ordinance was not rationally related to

September 11, 2007 and October 12, 2007 to the present. (Doc. 1.)

any legitimate governmental purpose. Finally, Plaintiffs contend that Defendants are estopped from revoking their Sunday Sales License because those issues were fully litigated at the June 6, 2007 hearing that resulted in the city council voting to not suspend Plaintiffs' license.[6] (Doc. 29 at 19.)

## ANALYSIS

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S.

---

[6] Plaintiffs also make several arguments is support of an injunction. (Doc. 29 at 16-18, 20-23.) Because that issue is now moot, the Court will not consider those arguments.

8

317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish, by going beyond the pleadings, that there is a genuine issue concerning facts material to its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more

than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

I. June 12, 2007 Amendment

Plaintiffs contend that the June 12, 2007 amendment to the Alcoholic Beverage Ordinance violated their right to due process because Plaintiffs did not receive adequate notice of the proposed amendment or an opportunity to be heard. (Doc. 29 at 13.) In addition, Plaintiffs argue that the June 12, 2007 amendment violated their right to equal protection under the law because it was not rationally related to any legitimate government purpose. (Id. at 19.)

A. Due Process

The Fourteenth Amendment reads in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." To prevail on a procedural due process claim, Plaintiffs must show that (1) they have a constitutionally protected property interest in their Sunday Sales License, (2) the amendment to the alcohol ordinance deprived Plaintiffs of that property interest, and (3) the procedures attendant upon that deprivation were constitutionally insufficient. Arrington v. Helms, 438

F.3d 1336, 1347 (11th Cir. 2006) (citing Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)).

The Supreme Court has determined that "[p]roperty interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). The United States Supreme Court has identified some types of licenses that qualify as property rights protected by the Due Process Clause. See, e.g., Barry v. Barchi, 443 U.S. 55, 64 (1979) (horse trainer's license), Bell v. Burson, 402 U.S. 535, 539 (1971) (driver's license). From these cases, it appears that a license may be a protectable property interest where it is "'essential in the pursuit of a livelihood.'" Goldrush II v. City of Marietta, 267 Ga. 683, 695, 482 S.E.2d 347, 358 (1997) (quoting Bell, 402 U.S. at 539). Also, an individual may have a property interest in a license where there is a legitimate claim of entitlement to its receipt. See Barry, 443 U.S. at 64 n.11 (quoting Perry v. Sindermann, 408 U.S. 593, 601 (1972)).

The Georgia Supreme Court has previously held that an alcoholic beverage license, when issued under certain circumstances, is a protectable property interest. Goldrush II, 267 Ga. at 695-96, 482 S.E.2d at 359 (citing Barry, 443 U.S. at 64). In Goldrush II, the Georgia Supreme Court analyzed whether an alcoholic beverage license issued under a municipal code created a protected property interest. The Court first noted that the Marietta ordinance contained an exclusive list of grounds that can result in the denial of a license application. Id. at 695, 482 S.E.2d at 359. Next, the court recognized that the license could only be revoked or suspended "upon the occurrence of specified events." Id. The court concluded that "[s]ince Marietta's city code sets forth the criteria which, if met, results in the issuance of a license, and specifies that an alcoholic beverage license issued by the city can be suspended or revoked only upon a showing of cause, the city code created a protectable property interest in the license." Id. (citing Barry, 443 U.S. at 64). In short, the Marietta ordinance created the protected property interest because an applicant was entitled to receive and keep the license provided the criterion enumerated in the ordinance were met. The "'legitimate claim of entitlement'" formed the basis for

the protected property interest.  Id. (quoting Barry, 443 U.S. at 65 n.11); cf. Cheek v. Gooch, 779 F.2d 1507, 1508 (11th Cir. 1986) (holding that state law does not grant property interest in alcoholic beverage license where local authority has discretion to issue license according to ascertainable standards).

However, Walthourville's Alcoholic Beverage Ordinance does not list specific criterion that, if met, entitle the applicant to an alcoholic beverage license.  While the ordinance does list prerequisites for licensing, it expressly grants to the City "the discretion to approve or deny any application for a license to sell alcoholic beverages."  (Doc. 1, Ex. 3 at 7.)  Unlike the ordinance in Goldrush II, the Walthourville ordinance does not create a claim of entitlement to a Sunday Sales License.  While the ordinance lists several factors the City must consider, it does not mandate that the City issue a license if certain requirements are met.  (See id. at 2) ("Factors Considered in Issuing Licenses or in Renewing Licenses").  Therefore, Plaintiffs do not have a constitutionally protected property interest in their Sunday Sales License.  See Cheek, 779 F.2d at 1508.  In the absence of a constitutionally protected property interest, Plaintiffs'

due process claim with respect to the June 12, 2007 amendment fails.

But even assuming that Plaintiffs have a protected property interest, the process provided by Defendants was adequate. The purpose of the constitutional right to due process is to provide an opportunity for a person to vindicate his or her claims. Roth, 408 U.S. at 577. Due process, at a minimum, requires that a person be given notice of impending action and afforded some type of a hearing. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). But the amount of process due depends on the type of claim and the strength of the right. For example, procedures adequate to determine a welfare claim may not suffice to try a felony charge. Compare Goldberg v. Kelly, 397 U.S. 254, 270-71 (1970), with Gideon v. Wainwright, 372 U.S. 335 (1963).

The amount of process that is due is governed by the three-part inquiry set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). The Mathews test requires the Court to consider (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards; and (3) the Government's interest, including the administrative burden

that additional procedural requirements would impose. Id. In general, due process requires that individuals must receive notice and an opportunity to be heard before government deprives them of property. United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993). In some limited circumstances however, a valid governmental interest will justify postponing a hearing until after the event. Id. at 53; see also Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n, 515 U.S. 582, 587 (1995) (discussing post-deprivation process in the context of taxation).

In the instant case, Plaintiffs argue that the new ordinances resulted in a de facto revocation of their Sunday Sales License. They rely partly on O.C.G.A. § 3-3-2 in claiming that they were denied notice and a pre-deprivation hearing prior to the de facto revocation. However, the procedural protections set forth in O.C.G.A. § 3-3-2 only provide for notice and a hearing after a license has already been revoked.[7] Therefore, Plaintiffs'

---

[7] This statute provides:
> The granting or refusal and the suspension or revocation of [liquor] permits or licenses shall be in accordance with the following guidelines of due process:
>> (1) The governing authority shall set forth ascertainable standards in the local licensing ordinance upon which all decisions

15

claim that they were denied a pre-deprivation hearing cannot be premised on a violation of this statute.[8]

Furthermore, Plaintiffs were afforded an opportunity to be heard regarding the City's concerns about the Bo'Maz club. Plaintiffs received notice that the City was considering the suspension or revocation of their alcoholic beverage license. A full hearing was then conducted before the City Council on June 6, 2007, where Plaintiffs were represented by counsel. They testified, presented evidence, cross-examined witnesses, and made arguments in defense of Bo'Maz. This hearing was conducted prior to the enactment of the new ordinances. Therefore, despite Plaintiffs' arguments that they received neither notice nor

pertaining to these permits or licenses shall be based;
(2) All decisions approving, denying, suspending, or revoking the permits or licenses shall be in writing, with the reasons therefor stated, and shall be mailed or delivered to the applicant; and
(3) Upon timely application, any applicant aggrieved by the decision of the governing authority regarding a permit or license shall be afforded a hearing with an opportunity to present evidence and cross-examine opposing witnesses.
O.C.G.A. § 3-3-2(b).
[8] Plaintiffs have not challenged the constitutional sufficiency of the process set forth in O.C.G.A. § 3-3-2. The adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms. Goldberg, 397 U.S. at 254. Plaintiffs have also not presented any evidence that that statute was violated in any other way.

an opportunity to be heard regarding the new ordinances, they were given an opportunity to be heard regarding the City's concerns.[9]

Because the City council held a hearing prior to taking any action, the Court finds that Plaintiffs' due process claim is meritless. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to this claim.

B.  Equal Protection

The police power confers broad regulatory authority over public health, welfare, and morals to state and local governments.  Harper v. Lindsay, 616 F.2d 849, 854 (5th

---

[9] Plaintiffs seek to distinguish the hearing on the proposed revocation of their Sunday Sales License from a hearing concerning the amendment to the ordinance. However, Plaintiffs' own argument shows this to be a distinction without a difference.

Plaintiffs argue that the failure to provide them notice and opportunity to be heard concerning the amendment denied them due process because the result of the amendment was the de facto revocation of their Sunday Sales License. But, Plaintiffs acknowledge that they were afforded adequate notice and opportunity to be heard prior to the proposed revocation of their license. It appears that, Plaintiffs, on one hand, treat revocation of their license as important enough to require due process with regard to the amendment. But, on the other hand, Plaintiffs treat the actual hearing concerning revocation of their license as unimportant with regard to the process afforded them prior to the City's enactment of the amendment.

To this Court, it seems that Plaintiffs cannot have it both ways. If Plaintiffs were to be afforded notice and opportunity to be heard concerning the amendment because it resulted in the de facto revocation of their Sunday Sales License, an actual hearing concerning the revocation of their Sunday Sales License should provide all the process that was due.

17

Cir. 1980).[10]    "Pursuant to the police power, the discretionary right of the state to regulate liquor sales, a dimension of the police power, is extensive." Davidson v. City of Clinton, 826 F.2d 1430, 1433 (5th Cir. 1987). Further, regulations pertaining to the sale of alcohol are entitled to special deference when challenged in court. "[T]he broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare and morals." California v. LaRue, 409 U.S. 109, 114 (1972) (abrogated on other grounds); Fillingim v. Boone, 835 F.2d 1389, 1394 (11th Cir. 1988). Therefore, only a minimal showing of rationality is necessary to enable an alcohol ordinance to withstand constitutional attack. Trs. of Mortg. Trust of Am. v. Holland, 554 F.2d 237, 238 (5th Cir. 1977). Such an ordinance may be held unconstitutional only if it is shown to bear no possible relationship to the state or local government's interest in securing the health, safety, morals, or general welfare of the public and is, therefore, manifestly unreasonable and arbitrary. Id.

---

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

With respect to the equal protection claim, Plaintiffs allege that they were singled out because Bo'Maz is the only business affected by the ordinance. However, because club owners and their establishments are not members of a suspect class, and because the right to sell alcoholic beverages is not a fundamental right, the challenged statutes are properly analyzed under the rational basis test.[11] State v. Heretic, Inc., 277 Ga. 275, 275, 588 S.E.2d 224, 225 (2003); see Patch Enters. v. McCall, 447 F. Supp. 1075, 1079 (M.D. Fla. 1978) ("There is nothing inherently suspect about regulating businesses that deal in alcoholic beverages."). Under the rational basis test, a statute is presumed valid and will be upheld as long as it is rationally related to a legitimate government interest. United States v. Campos-Diaz, 472 F.3d 1278, 1280 (11th Cir. 2006).

The City claims public safety concerns as its governmental interest. (Doc. 24 at 33-34.) The Court finds that this is a legitimate government interest and

---

[11] Plaintiffs' argument that they have been denied equal protection because the amendment only applies to them is without merit. The ordinance is a law of general application, and it is simply coincidence that Bo'Maz is the only nightclub in Walthourville. The City need not wait for a new club to open before it can enact regulations rationally related to preserving the safety of its citizens.

that an ordinance limiting the hours of on-premises alcohol sales is rationally related to furthering that end.  See, e.g., Heretic, 277 Ga. at 276, 588 S.E.2d at 225-26. Therefore, Defendants' Motion for Summary Judgment with respect to this claim is **GRANTED**.[12]

## II.  October 12, 2007 License Revocation

Plaintiffs' due process and equal protection claims also fail with respect to the October 12, 2007 license revocation.  First, with respect to the due process claim, Plaintiffs do not dispute that they were given notice of the October 12, 2007 hearing.  In fact, the hearing was initially set for October 6, 2007 and rescheduled at Plaintiffs' request.  Therefore, Plaintiffs clearly received adequate notice and an opportunity to be heard. The fact that Plaintiffs failed to appear at that hearing does not render the process afforded to them insufficient.

Second, Plaintiffs' equal protection claim fails for the same reasons discussed above.  See supra Part I.B.

Finally, Plaintiffs' attempt to invoke the doctrine of res judicata is unavailing because it bears no relation to whether Plaintiffs were afforded due process or equal

---

[12] A substantive due process claim would also be analyzed under a rational basis test, and would therefore be equally unavailing.  See, e.g., N.D. State Bd. of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 164 (1973).

protection.[13]   Accordingly, Defendants' Motion for Summary Judgment is granted with respect to the October 12, 2007 revocation of the Sunday Sales License.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.   The **Clerk of Court** is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 26th day of March, 2009.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[13] Plaintiff seems to argue in its Response to Defendants' Motion that the doctrine of res judicata would apply to the City's October 12, 2007 decision to revoke the Sunday Sales License.   However, Plaintiffs' Complaint raises claims based on due process and equal protection, and does not argue that the City was barred from revoking the Sunday Sales License based on its earlier vote.   These claims involve issues regarding the license as property, adequate notice, and the relationship of the ordinance to the City's interest in safety.   Therefore, the Court need not address the question of whether the City's actions were precluded by res judicata because it is unrelated to the issues implicated in Plaintiffs' Complaint.   Because res judicata is an affirmative defense, see Fed. R. Civ. P. 8(c)(1), the proper time for Plaintiffs to raise it would have been at the October 12, 2007 hearing.